McFADDEN & OATES *v.* RAY.

(Division B. Jan. 2, 1939.)

[185 So. 245. No. 33455.]

Robert N. Somerville, of Cleveland, for appellants.

A. B. Sparkman, of Cleveland, for appellee.

**McGehee, J.,** delivered the opinion of the court.

This is a suit by attachment in the chancery court of Bolivar County, wherein appellee recovered a personal decree for commissions on the purchase of cotton, against the appellants, as non residents entering their appearance, and also subjecting the attached property to sale.

On appeal the appellants, as members of the partnership firm of McFadden & Oates, of Memphis, Tennessee, cotton buyers, seek a reversal on two grounds: (1) that appellee as agent in the purchase of the 1623 bales of cotton on which he recovered a commission of 50 cents per bale violated the terms of his written contract as to the limits and instructions given him as to grade and staple, thereby forfeiting the commission thereon; (2) that appellee bought some of the cotton from local partnership firms of which he was a member in violation of his relationship as agent of appellants.

On the first proposition, the chancellor found from the evidence that subsequent to the execution of the written contract of employment an oral agreement was entered into between the parties whereby the appellee had the right to take over and resell any cotton that did not come within the limits and instructions given by appellants as to grade and staple and in effect held that he offered to do so, but that appellants retained the cotton, and thereby waived any objections to the classifications given the same by appellee, an experienced and competent cotton classer. We are unable to say that the chancellor's

finding in this regard was not supported by the testimony; and at least we are unable to say that such finding was manifestly wrong.

It is urged however that since the contract as originally made in writing bound the appellee to accept the classifications given the cotton by appellants, and provided that he should receive no commissions on any that he bought for them on a higher classification than theirs, he would not be entitled to the commission on 1042 bales of the cotton sued for; and also that it was not permissible to show that appellee's classifications were correct. Responding to this contention it is sufficient to say that whenever it is contemplated by the terms of a contract that it shall be performed to the satisfaction of the party for whose benefit services are rendered, or to whom goods are delivered, the rule is that an objection to, or a disapproval of, the manner of performance must rest on some reasonable and just basis, unless the transaction involves a matter of peculiar fancy, taste or sensibility.

It was shown that a legitimate margin of difference in the classification as to grades and staples of cotton when made by competent and experienced classers does not justify the marked contrast between the respective classifications here in controversy. From the facts disclosed it could have been reasonably inferred that either the classifications made by appellee or those made by the classers employed by appellants were carelessly made, or were arbitrary. The chancellor found from the testimony of appellee and his witnesses, some of whom graded and classified a good portion of the cotton in question, that he had properly graded and classified the same. Moreover, no testimony was offered by appellants as to the correctness of the classifications made by them—introduced in evidence by appellee for the purpose of showing their incorrectness—except the proof as to how long each of the classers in the employ of appellants had been engaged in such work.

On the second proposition urged for reversal, the tes-

timony was insufficient to show what portion of the cotton was purchased by appellee from the partnerships of Ray & Minor and Ray & Norwood, respectively, except in regard to 20 or 25 bales, bought 50 points cheap, and 250 bales bought at 10 points under what a representative of another Memphis cotton firm had offered the partnership of Ray & Norwood for it, and which 250 bales appellee offered to take over and resell at a profit to appellants when he was notified that his classification thereon was high as compared with that given this lot by the appellants. The contention that appellee violated his duty under his relationship of agent to appellants in buying this cotton from a partnership of which he was a member would ordinarily be well taken. However, the proof in this case disclosed, and the chancellor found, that appellants knew all the while that appellee had Minor and Norwood buying cotton for him under some sort of an arrangement, and acquiesced therein. It was further shown on behalf of the appellee that as agent of appellants he did not hesitate to reject any and all cotton offered him by these partnerships in which he was a member unless it complied with the limits and instructions furnished by his said principal, although the cotton purchased by his partners was purchased with the individual funds of appellee. The right to repudiate the transaction where an agent acts in a dual capacity is one existing for the principal's protection, and he may waive it at his option. We are of the opinion that, under all the circumstances, no unfair advantage was taken of appellants; and that when appellee offered to take over and resell this cotton pursuant to his alleged subsequent oral agreement with appellants he became entitled to collect his commissions thereon.

The decree of the court below should therefore be affirmed.

Affirmed.